United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 17, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 05-11292

(Summary Calendar)

————————

STEVE BURDEN,

Plaintiff - Appellant,

versus

SOUTHWESTERN BELL TELEPHONE COMPANY, L.P.,

Defendant - Appellee.

————————————————————————————————————

Appeal from the United States District Court
For the Northern District of Texas
USDC No. 5:04-CV-159-C

————————————————————————————————————

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Steve Burden is a forty-nine year old, insulin-dependent diabetic who was employed as a customer service technician ("CST") with Southwestern Bell Telephone Company, L.P. ("SBC"). A CST installs, tests, and maintains cable and wire equipment. A CST must be able to work on

————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

telephone poles, move materials such as ladders and tools, work at heights over 18 feet, work in manholes, and operate lifts and ladders mounted on trucks. In addition, a CST must be able to safely drive a company vehicle.

While employed as a CST, Burden had multiple hypoglycemic incidents as a result of his diabetic condition. In 1996, a police officer found him slumped over the steering wheel of his company vehicle while it was parked in the left turn lane of a busy road. Burden testified that he had to stop to collect his thoughts so that he could "survive" after he began to experience the effects of low blood sugar. In 1998, he was taken to a hospital for treatment after arriving at work disoriented and after individuals at a gas station reported to police that he appeared intoxicated. In 1999, he crashed his company truck into a concrete pole in the company parking lot. Burden claims he did not see the concrete pole and that the crash was not caused by his diabetes. In 2001, Burden collapsed while working near a telephone pole and was taken to a hospital where doctors determined that he had low blood sugar.[1] Finally, in 2003, Burden was observed walking around an SBC facility shirtless, disoriented, and unresponsive as a result of low blood sugar.

After the incident in 2003, SBC gave Burden ninety days to find a non-driving position.[2] Burden submitted three job vacancy requests: two were for regular driving positions; the third

---

[1] After the 2001 incident, SBC reached a settlement agreement with Burden resolving a dispute over his ability to continue driving as a CST. This agreement required that Burden obtain a physician to monitor his diabetes. It also provided him with time during the work day to monitor his blood sugar and allowed him to carry a cooler containing food and blood-testing equipment. Under the agreement, SBC retained the right to remove him from a driving position if there were additional incidents that raised safety concerns.

[2] SBC policy provides that, where an employee's driving and safety record poses a financial risk to the company or creates a public safety risk, management may remove an employee from a driving position. Under the policy, an employee is given ninety days to secure a non-driving position prior to dismissal.

position required keyboarding skills that Burden did not possess. SBC subsequently terminated his employment.

Burden sued in federal district court alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"). After Burden abandoned his claim under the ADEA, the district court granted summary judgment for SBC, concluding that Burden had failed to make out a *prima facie* case of discrimination under the ADA.

We review a district court's grant of summary judgment *de novo*. *See EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999). Summary judgment is appropriate where the moving party establishes "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Once the moving party has carried its summary judgment burden, the opposing party must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.' " *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). To prevail, a plaintiff must first demonstrate that 1) he has a "disability"; 2) he is "qualified" for the job; and 3) he experienced an adverse employment decision because of his disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (citing *Rizzo v. Children's World Learning Ctrs., Inc*., 84 F.3d 758, 763 (5th Cir. 1996)). "Once the plaintiff makes his *prima facie* showing, the burden then shifts to the

defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000). "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *McInnis*, 207 F.3d at 280.

In a well-reasoned decision, the district court concluded that Burden had failed to establish a *prima facie* case that he was: (1) disabled or perceived as disabled; or (2) qualified for the position of CST. After reviewing the summary judgment evidence, we agree that Burden has not shown he is a "qualified individual" under the ADA.

"We have defined an otherwise qualified person as one who is able to meet all of the program's requirements in spite of his handicap." *Turco*, 101 F.3d at 1093 (internal quotation marks omitted) (citations omitted). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "To avoid summary judgment on whether he is a qualified individual, [a plaintiff] must show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Turco*, 101 F.3d at 1093.

Burden failed to create a genuine issue of material fact establishing that he was qualified in spite of his condition or that reasonable accommodations could have rendered him qualified. SBC produced evidence of on-the-job hypoglycemic incidents that reasonably raised concerns regarding his ability to safely operate a vehicle. Even after SBC and Burden reached an agreement allowing him

-4-

to take breaks to measure his blood sugar and more easily access food while working, Burden again had an on-the-job hypoglycemic incident. Beyond asserting that he has served as a CST for twenty-five years without a diabetes-related vehicular accident, Burden identifies little evidence that would raise an issue of fact regarding his capacity to continue to perform the functions of a CST. *Accord Chandler v. City of Dallas*, 2 F.3d 1385, 1385 (5th Cir. 1993) ("Woe unto the employer who put such an employee behind the wheel of a vehicle owned by the employer which was involved in a vehicular accident." (quoting *Collier v. City of Dallas*, No. 86-1010, slip op. at 3 (5th Cir. Aug. 19, 1986))). There is also no evidence that Burden requested an accommodation that would have allowed him to safely operate vehicles for the company. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735-36 (5th Cir. 1999) (noting that an employee must participate in an "interactive process" with the employer to arrive at a suitable accommodation). Rather, the record establishes that SBC gave him ninety days to find a non-driving position within the company, he was not qualified for any of the three positions for which he applied, and SBC subsequently terminated his employment.

Burden has failed to establish a *prima facie* case under the ADA. Accordingly, we AFFIRM the district court's order granting summary judgment in favor of SBC.